JOHN T. DOLAN, Plaintiff-Respondent, v. EDWARD H. RABENBERG and ERNEST B. KITCHELL, Defendants-Appellants, No: 41207—231 S. W. (2d) 150.

Division One, June 13, 1950.

Motion to Modify Opinion Overruled and Opinion Modified on Court's Own Motion, July 10, 1950.

*S. D. Flanagan* and *A. Evan Hughes* for appellants.

860

*Frank L. Ramacciotti* and *Roberts P. Elam* for respondent.

■ DALTON, J.—Action for fraud and deceit, to wit, false and fraudulent representations, willfully and maliciously made by defendants to plaintiff for the purpose of deceiving the plaintiff and inducing the execution of an earnest money contract for the purchase of described real estate in St. Louis county. Plaintiff alleged that defendants knew they could not perform the contract; that it was not performed; that the real estate agreed to be sold to plaintiff for $45,000 was of the reasonable value of $65,000; and that it was sold to another person. Plaintiff seeks to recover, as actual damages caused by the fraud, the benefit of his bargain obtained by the fraudulently induced contract. It being in effect plaintiff's theory that the same fraud, which induced the execution of the contract by which the bargain was obtained, caused the loss of the bargain and the damage to plaintiff by the non-performance of the contract; and that plaintiff is further entitled to recover exemplary damages. Plaintiff obtained a verdict and judgment for $2,700 actual and $12,100 punitive damages. Defendants have appealed and contend that no case was made for the jury. We shall continue to refer to the parties as plaintiff and defendants.

On March 22, 1946, plaintiff learned from one Holton that defendants Rabenberg and Kitchell were respectively president and secretary-treasurer of the Maplewood Motor Sales Company, a corporation, which owned the described real estate; and that the stockholders of said corporation were desirous of selling the property and liquidating the corporation. Plaintiff had known the property for years and knew that it was in the possession of the Lowry Motor Company. Plaintiff prepared a form of earnest money contract, entitled "receipt for earnest money," signed his sister's name thereupon as purchaser (she was a straw party for him) and arranged conferences with Rabenberg, Kitchell, and others, submitting an offer of $41,000 for the property. On March 25, an agreement was reached and the form of the receipt for purchase money was ■ modified and signed by plaintiff and the defendants. The sale price of the property was fixed at $45,000, receipt of $1,000 earnest money was acknowledged, sale under the contract was to be closed on or before May 1, 1946, and possession was to be delivered on July 1. The contract contained the following provisions: "The title to said property to be perfect, and to be conveyed by general warranty deed, subject to conditions and restrictions of record and easements, if any, * * *. If title be found imperfect and seller cannot perfect same in a reasonable time, the above mentioned deposit is to be

refunded, together with additional amount to cover cost of examination of title, thereby releasing the purchaser therefrom.''

On March 28, the vendors notified the lessee, Lowry, to vacate the described property within 90 days. The lessee replied that he was in possession under a 5 year lease dated January 23, 1945, by which he had a prior right to purchase the premises for the same price and on the same terms as a bona fide purchaser. He asked the terms of the proposed sale of the property to plaintiff and, on April 2, he recorded his lease. On April 26, plaintiff tendered to defendants $44,000 in cash, the balance of the purchase price and demanded performance, but defendants refused the tender. On April 27, defendants repudiated their contract with plaintiff and returned to him the original cashier's check for $1,000, which he had deposited. Plaintiff retained and cashed this check. When plaintiff obtained a certificate of title to the property, the certificate disclosed Lowry's lease and prior option to purchase the premises. Plaintiff did not pay the cost of this certificate but apparently the defendants caused payment to be made, although the record is not entirely clear. On June 7, lessee Lowry exercised his option and purchased the property for $45,000. In view of the conclusions we have reached it will not be necessary to review the evidence concerning the alleged representations, their falsity and defendants' knowledge thereof, the intent with which the representations were made and plaintiff's reliance thereon, but some other facts will be stated in the course of the opinion.

Plaintiff's theory is eloquently evidenced by instruction 1, offered and given to the jury at his request, as follows: ''The Court instructs the jury that the writing referred to in evidence as the 'earnest money contract' and the 'receipt for earnest money,' bearing date of March 22, 1946, was and is a valid and binding contract whereby the defendants Edward H. Rabenberg and Ernest B. Kitchell sold the real estate mentioned in evidence, referred to as 7434 Manchester Avenue, for the price and sum of Forty-Five Thousand Dollars ($45,000.00) in cash to be paid upon the closing of the sale on or before May 1, 1946, of which the One Thousand Dollars ($1,000.00) receipted for in said 'earnest money contract' was a part, and whereby the defendants bound themselves to convey perfect title to said real estate by general warranty deed upon the closing of said sale and to deliver the possession of said real estate to the purchaser on July 1, 1946.

''Therefore, the Court instructs you that, if you find and believe from the evidence that on or about the 25th day of March, 1946, the plaintiff met with defendants and James O. Holton at the office of the defendant Ernest B. Kitchell for the purpose of discussing the possible sale by defendants of the aforesaid real estate, and that the defendants then and there, for the purpose of inducing the plaintiff

to enter into said 'earnest money contract' for the purchase of said real estate, if you so find, represented to the plaintiff that defendants and James O. Holton represented all of the stockholders of the Maplewood Motor Sales Company, a corporation, that the defendants were agents and representatives of said Maplewood Motor Sales Company with authority to sell and convey said real estate for said company, and that the defendants as officers of said Company were in a position to convey and deliver fee simple title to said real estate to a purchaser thereof and to deliver possession of said real estate to a purchaser thereof on July 1, 1946; and if you further find that the plaintiff relied upon the aforesaid representations of defendant, and in reliance thereon, if you so find, then and there entered into said written 'earnest money contract', either in his ▮▮▮ own name or in the name of Marcella Slaughter as his straw party, if so, or in both his name and the name of Marcella Slaughter as his straw party; and if you further find that the aforesaid representations made by defendants (that defendants and James O. Holton represented all of the stockholders of the Maplewood Motor Sales Company, that the defendants were agents and representatives of said Company with authority to sell and convey said real estate for said Company, and that defendants as officers of said Company were in a position to convey and deliver fee simple title to said real estate to purchaser thereof and to deliver possession of said real estate to a purchaser thereof on July 1, 1946) were false, and were known by defendants to be false, or were made by defendants as of their own knowledge when defendants had no knowledge thereof, if so; and if you further find that on or about the 26th day of April, 1946, plaintiff tendered to defendants in cash the balance of Forty-Four Thousand Dollars ($44,000.00) due on the purchase price of said real estate under the aforementioned 'earnest money contract,' and that defendants refused to accept the same, or any part thereof; and if you further find that on or about the 27th day of April, 1946, the defendant Ernest B. Kitchell acting on behalf of the defendants, if you so find, advised and informed plaintiff that said 'earnest money contract' was legally invalid and void and that the defendants were without authority to make a sale under it on behalf of said Maplewood Motor Sales Company; and if you further find that defendants and the said Company would not and did not perform the said 'earnest money contract'; and if you further find that the reasonable market value of said real estate, as of May 1, 1946, exceeded the purchase price thereof provided for by said 'earnest money contract,' then your verdict must be in favor of the plaintiff and against the defendants herein.''

The jury was further instructed that, if their verdict was for plaintiff, they should award him actual or compensatory damages for the amount the reasonable value of the premises on May 1 exceeded the purchase price fixed by the agreement; and that, if they

believed and found that defendants maliciously made the false representations, as set out in instruction 1, they were at liberty to award to plaintiff punitive or exemplary damages.

Appellants challenge the sufficiency of the evidence to make a case for the jury on many grounds and insist that the court erred in submitting the issue of fraud to the jury. Respondent, however, says the sufficiency of the evidence was not tested in the trial court by a request for a directed verdict and the matter is not for review. Respondent relies particularly on Secs. 100, 112 and 140 of the Civil Code. Laws 1943, p. 343.

At the close of plaintiff's case defendants' counsel made an oral request for a directed verdict and filed instruments in writing, styled motions to dismiss, requesting the court to dismiss plaintiff's case because plaintiff had failed to prove his case, had failed to prove that defendants perpetrated a fraud upon him and had failed to show any intent on the part of defendants to defraud plaintiff and because the record showed that plaintiff *did not suffer any damages.* Other grounds for dismissal were that the evidence showed plaintiff had knowledge of the lease which carried the option to buy and that plaintiff had accepted the return of the earnest money and defendants had paid the cost of title in compliance with the terms of the agreement. The motions were overruled. They were re-offered with the court's permission at the close of all the evidence and were laid over until the next day and not ruled or sustained. (See Sec. 113 of the Civil Code, supra). Further at the close of all the evidence the defendants asked peremptory instructions in their favor, which were considered and denied by the court. The same matters were sought to be preserved in defendants' motion for a new trial and motion for a judgment in accordance with motions for a directed verdict and to dismiss or in the alternative for a new trial. In the motion for a new trial defendants complain of the court's failure to sustain their motions to dismiss, of the court's failure to direct a verdict in their favor and of the refusal of the court to give their requests for peremptory instructions. Defendants further complained that the court erred in submitting the issue of fraud to the jury and insisted there was no evidence to warrant a finding against either defendant.

We think it is apparent from the record that, regardless of forms and terms used, appellants made known to the court the action which they desired the court to take; that the trial court did in fact rule the issue of the sufficiency of the evidence; and that an effort was made to preserve the matter for review. In any case, since we consider appellants' contention meritorious, we will consider and rule the assignment, notwithstanding deficiencies in the forms used to test the sufficiency of the evidence, and without ruling as to the extent of the deficiencies in the terms and forms used in making

any requests that were made. Rule 3.27; Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S. W. (2d) 789, 793; Oganaso v. Mellow, 356 Mo. 228, 201 S. W. (2d) 365.

■ There seems to be no dispute between the parties as to the essential elements required to sustain plaintiff's tort action for fraud and deceit, to wit, that "a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage." Fraud and Deceit, 23 Am. Jur., p. 773, § 20. And see, Nash v. Normandy State Bank (Mo. Sup.), 201 S. W. (2d) 299, 303; Remmers v. Remmers, 217 Mo. 541, 117 S. W. 1117, 1121; Maupin v. Provident Life and Accident Ins. Co. (Mo. App.), 75 S. W. (2d) 593, 596; Stoltzfus v. Howey (Mo. App.), 54 S. W. (2d) 501, 505; 37 C. J. S. 215, Sec. 3. A failure to establish any one of the essential elements of fraud is fatal to a recovery. Dillon v. Hill (Mo. Sup.), 178 S. W. 85, 86[1]; Orlann v. Laederich, 338 Mo. 783, 92 S. W. (2d) 190, 194.

■ Plaintiff insists that "the evidence was sufficient to establish all of the elements of a case for plaintiff upon the theory of fraud and deceit in the making of false representations to induce plaintiff to execute a contract to buy the real estate," citing Stoltzfus v. Howey, supra; Patzman v. Howey, 340 Mo. 11, 100 S. W. (2d) 851; Gash v. Mansfield (Mo. App.), 29 S. W. (2d) 127. There is no contention that plaintiff ever acquired the property in question; that it was ever conveyed to him; or that he did any more than enter into the contract *to buy* the property and made the down payment which was later returned to him and retained by him.

In support of the contention that no case was made for the jury, defendants urge that a vendor's representations as to the validity of his title or right of possession are mere expressions of confidence in his title; that there was no proof of scienter; that there was no proof of an intent to deceive, or to defraud; that the evidence showed defendants acted in good faith; that the executory contract contemplated an investigation of the title before the delivery of a deed to the property; that there was no proof of reliance on any statements made by defendants as plaintiff made his own investigation of title; that plaintiff admittedly had knowledge of Lowry's possession of the premises, of the fact that Lowry had a lease and so had constructive knowledge of the terms of Lowry's lease; that all of the facts shown with reference to defendants were as consistent with honesty and good faith as with fraud and plaintiff failed to carry the burden of proof; and that no damage to plaintiff was shown.

While the matter of no damage to plaintiff is not urged on this appeal to the same extent as some other matters, the matter was

specifically presented by defendants' answer, which denied "that plaintiff sustained actual damages of Twenty Thousand Dollars ($20,000.00) or any other sum by reason of any representations of the defendants." The same issue was presented at the close of all the evidence, it was again presented in the motion for a new trial and it is urged on this appeal. Defendants say that the record shows plaintiff's earnest money check was returned to him and cashed by him; that he did not pay for the title certificate, but that such cost was paid by the ▪▪▪▪ corporation; that plaintiff was placed in status quo; and that "that ended his claim for damages." It is further insisted that the burden rested upon the plaintiff to prove every essential element necessary to sustain an action of fraud before he was entitled to recover; that his failure to prove any one of the essential elements was fatal to his recovery; that, if plaintiff had any right of action, it was for breach of contract and not fraud; and that punitive damages are not recoverable for breach of contract. Appellants further contend that the court erred in the admission of evidence, in permitting prejudicial argument by plaintiff's counsel, in giving of plaintiff's instructions Nos. 1 and 4, in the refusal of defendants' instructions A, B, and C, and in failing to rule on defendants' motion that the jury's award of punitive damages was excessive. If plaintiff failed to make a submissible case on the issue of fraud the other alleged errors are immaterial. We think plaintiff failed to make out such a case for the jury and it will only be necessary to review the evidence on the issue of damage.

Proof of substantial injury and damage is essential to recovery in an action for fraud and deceit. Bell v. Butte Inv. Co. (Mo. Sup.), 250 S. W. 381, 384; Budd v. Budd, 233 Mo. App. 377, 122 S. W. (2d) 402, 409; Gash v. Mansfield (Mo. App.), 28 S. W. (2d) 127, 132; 23 Am. Jur. 985, Sec. 172; 37 C. J. S. 288, Sec. 40. The damage and injury must directly and proximately result from the fraud. Budd v. Budd, supra; 37 C. J. S. 296, Sec. 42; 37 C. J. S. 466, Sec. 141; 23 Am. Jur. 995, Sec. 176.

In this case plaintiff charged that he was fraudulently induced to enter into the contract. The contract on plaintiff's theory was highly beneficial, since it was a contract to buy for $45,000 property worth $65,000. The contract on plaintiff's own submission (instruction 1, supra) was a valid and binding contract. Plaintiff had no right in the property to lose prior to the execution of the contract. He contends that he was induced by the alleged false and fraudulent representations to enter into the contract to purchase the property in question, but that the property was never conveyed to him. The only thing the alleged fraud accomplished was to give him this beneficial contract.

Was plaintiff damaged by the fraud that induced the execution of the contract? If so, what was the damage? The only facts pleaded

in the petition to show damage were the making of the down payment on the property and the failure of defendants to perform the contract and convey to plaintiff property of the reasonable value of $65,000 for the contract price of $45,000. Actual damages in the sum of $20,000 were claimed. Plaintiff's evidence tended to show the property had a maximum reasonable market value of $62,000. The return of the down payment to plaintiff and his acceptance and retention of it were admitted. It was further admitted that he did not pay for the title examination. Instruction 1 submitted no required finding on the issue of damages other than, as evidenced by the words, "and if you further find that the reasonable value of said real estate * * * exceeded the purchase price * * *." Plaintiff's instruction on the measure of actual damages fixed the amount of recovery for actual damages at the difference between the actual value of the property and the contract price. No other damage was claimed. No evidence of any other alleged damage was shown.

Plaintiff concedes that he is proceeding "under the loss of bargain theory"; and that it is on that theory that he seeks to recover the difference between the contract price and the actual value of the property at the time the contract was to have been performed and possession delivered. The rule relied upon is well stated in 24 Am. Jur., Fraud and Deceit, Sec. 227, p. 55, as follows: "The great weight of authority sustains the general rule that *a person acquiring property* by virtue of a commercial transaction, who has been defrauded by false representations *as to the value, quality, or condition of the property*, may recover as damages in a tort action the difference between *the actual value* of the property at the time of making the contract *and the value that it would have possessed if the representations had been true.* In other words, the defrauded party is entitled to recover the *difference between the* *real and the represented value of the property.*" (Italics ours). Also see statement of the rule in 14 Am. & Eng. Ency. Law (2 Ed.), 182; 37 C. J. S. 295, Sec. 41 (g) and p. 478, Sec. 143 (b) (2); Kendrick v. Ryus, 225 Mo. 150, 158, 123 S. W. 937; Busse v. White, 302 Mo. 672, 259 S. W. 458, 460; Reynolds v. Davis, 303 Mo. 418, 260 S. W. 994, 997; Wolfersberger v. Miller, 327 Mo. 1150, 39 S. W. (2d) 758, 765; McFarland v. Cobb (Mo. Sup.), 64 S. W. (2d) 931, 935.

We think the "benefit of bargain" rule has no application whatever to the facts of this case for several reasons. Plaintiff never acquired or retained the property. The contract was never carried into execution, but remained executory. In fraud cases the rule relied upon applies only where the purchaser acquires and retains the property and does not get what he paid for. Menke v. Rovin, 352 Mo. 826, 180 S. W. (2d) 24, 27; Kendrick v. Ryus, supra; Luikart v. Miller (Mo. Sup.), 48 S. W. (2d) 867, 871. While the property was never transferred, plaintiff accepted the return of his down payment on the contract and

defendants apparently paid or caused to be paid the cost of obtaining the certificate of title. These matters were essential to the release of the purchaser under the terms of the contract. He incurred no other liability under the contract. Further, no false representations concerning the alleged value of the property were either pleaded, proven or submitted. There is no contention that there were any false or fraudulent representations as to the value of the property or as to any matters entering into value. The value as contended for by plaintiff was never binding on defendants. "If the false statements which induced the trade were as to the quality, condition or any fact which would enter into the value of the land, the measure would be the difference between the actual value and the value * * * if the property had been as represented." Thompson v. Lyons, 281 Mo. 430, 431, 220 S. W. 942, 949. The rule, however, only applies where the purchaser acquires and retains the property. The purpose of the rule is to give the purchaser the benefit of the bargain where the vendor has fraudulently represented to him a value greater than the amount he paid and where the purchaser did not get what he paid for.

We find no statement of the "benefit of bargain" rule which would be applicable to the facts in this case where title was not transferred, and we find no case where the rule has been applied to a case where there were no fraudulent representations as to quality, condition, or other matters entering into value of the property acquired and retained, or where the vendors were in no wise bound as to any designated value of the property conveyed.

We hold that the damage complained of was not caused by, nor resulted from, the fraud which induced the execution of the contract. On plaintiff's own theory of values the contract was highly beneficial. If the fraudulently induced contract was valid, beneficial and enforceable, the damage resulting to plaintiff from its non-performance was not caused by the fraud which induced its execution. Absent the contract plaintiff had no right to acquire the property, and no bargain to lose. The damages, if any, resulting from the failure of defendants to convey the described property to plaintiff in accordance with the contract, and any loss occasioned by the breach of the contract, did not and could not have been the direct result of the fraud complained of. Defendants are not liable to plaintiff in an action of fraud and deceit for the *benefits* which would have accrued to plaintiff from the *performance* of the contract which plaintiff alleges he was fraudulently induced to enter into. Plaintiff failed to make out a submissible case for the jury on the issue of damage and it will not be necessary to consider other alleged deficiencies in plaintiff's case, nor need we consider other errors assigned.

The judgment is reversed. All concur.